**In re Lawrence McKINNEY, Jr. and Judy McKinney, Debtors.**

**Lawrence McKINNEY, Jr. and Judy McKinney, Plaintiffs,**

v.

**LEVEL PROPANE, Defendant.**

Bankruptcy No. 95–31040.
Adversary No. 95–0117.

United States Bankruptcy Court,
S.D. Ohio,
Western Division.

Feb. 15, 1996.

demand.' " (citations omitted)).

Christopher M. Hawk, Dayton, OH, for Plaintiffs/Debtors.

David C. Eisler, Brook Park, OH, for Defendant.

DECISION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 16)

WILLIAM A. CLARK, Chief Judge.

This matter is before the court upon "Defendant's Motion for Summary Judgment" (Doc. # 16), "Angela Alderman's Affidavit in Support of Defendant's Motion for Summary Judgment" (Doc. # 20), "Plaintiff's Response to Defendant's Motion for Summary Judgment" (Doc. # 18), and a "Submission of Affidavit of Lawrence McKinney" (Doc. # 19). The court has jurisdiction pursuant to 28 U.S.C. § 1334 and the standing order of reference entered in this district. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

### PROCEDURAL POSTURE AND UNDISPUTED FACTS

On June 8, 1995, debtors Lawrence and Judy McKinney, Jr., filed a complaint against defendant Level Propane alleging that the plaintiffs had entered into a lease agreement to rent a propane tank from the defendant for $1.00 a year and that the defendant vio-lated the automatic stay of § 362 of the Bankruptcy Code by exerting control over property of the bankruptcy estate by removing a regulator from the propane tank thereby making the tank inoperable. The following facts appear to be undisputed by the parties.

1) The plaintiffs filed a petition for relief under chapter 7 of the Bankruptcy Code on March 29, 1995.

2) The plaintiffs listed a debt to defendant as an unsecured claim.

3) Prior to his bankruptcy filing, Mr. McKinney signed a "standard customer contract" with the defendant which contains the following relevant provisions: [1]

**"Customer Credit Application and Agreement for Propane Service and Equipment Lease"**

. . . .

**USE, OWNERSHIP AND ACCESS TO EQUIPMENT**—Equipment leased hereunder will be used only in connection with propane purchased from Level, all items of equipment furnished by level are and will remain the property of Level or its lessor. . . .

. . . .

**OPTION TO PURCHASE**—Customer has no option to purchase equipment leased hereunder.

. . . .

**EARLY TERMINATION/CUSTOMER'S DEFAULT**

. . . .

(b) Level may terminate this agreement before the end of the term by not less than 30 days written notice to customer or immediately and without notice if customer fails to comply with this agreement or to pay for propane purchased from Level when due.

. . . .

(d) If customer defaults Level may adjust or disconnect equipment to terminate propane withdrawal therefrom, repossess equipment leased hereunder and repossess

1. The affidavit of Angela Alderman (the defendant's credit manager) states that Exhibit "B" is a "standard customer contract or the kind signed by Mr. McKinney." This photocopy of the agreement does not contain Mr. McKinney's signature nor the monetary terms of the agreement. Mr. McKinney does not, however, deny that he signed such an agreement, and the court concludes that the submitted agreement is the type signed by Mr. McKinney.

and dispose of any propane therein not paid by the customer....

....

**SURRENDER OF EQUIPMENT**—Customer shall surrender equipment leased hereunder in good condition to Level at the location described above upon expiration of the term or earlier termination of this agreement.

4) On May 18, 1995, defendant removed a regulator from the propane tank.

Presently before the court is defendant's motion for summary judgment under Fed. R.Civ.P. 56.

## CONCLUSIONS OF LAW

Section 362(a) of the Bankruptcy Code provides that the filing of a petition in bankruptcy operates as a stay of many acts against a debtor, property of a debtor and property of the debtor's bankruptcy estate. 11 U.S.C. § 362(a).

The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 54–55 (1978); 1978 U.S.C.C.A.N. 5787, 5840-5841, 6296-6297.

In the instant case, the plaintiffs allege that the defendant's activities with respect to a propane tank constituted a violation of a provision of § 362 of the Bankruptcy Code which stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). If it is proven that the defendant has willfully violated the automatic stay, sanctions will be imposed against the defendant.

An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(h).

Under the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine issue of material fact, and the party moving for summary judgment is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). Here, the court finds that there is a genuine issue of material fact regarding the defendant's knowledge of the existence of the automatic stay which arose upon the debtors' initiation of bankruptcy proceedings. As a result, the court finds it inappropriate to grant summary judgment to the defendant.

That being said, the court is also of the opinion that it may assist the parties' settlement negotiations if certain preliminary observations are made by the court. The fundamental premise of defendant's motion for summary judgment is that "neither the equipment nor the gas were ever property of the estate" (Doc # 16):

By the terms of the contract, Level Propane reserves the control and possession of the tank and equipment. In the case at bar, because there was no billing for the lease, no lease can be said to have come into effect. The tank was on the Debtors' premises as an adjunct to the provision of propane to the Debtors. As was clear from the terms set forth above, Level at all times reserved control and possession of the tank.... [T]here was no consideration paid to transfer any leasehold or leasehold rights. Hence Level never conveyed any rights to the Debtors with respect to the equipment, either to control or possess. The equipment could not, by the terms of 11 U.S.C. § 541, become the property of the estate. As property outside the possession or control of the Debtors or the estate, the equipment could not become subject of the automatic stay under 11 U.S.C. § 362. *Id.*

Initially, the court finds that it is unpersuaded by defendant's assertion and argument that neither the debtors nor their bank-

ruptcy estate controlled or possessed the propane tank. Despite language in the parties' agreement reserving control and possession to the defendant, the fact that the tank and gas were located on the debtors' premises belies the defendant's theory and clearly evidences the debtors', and thereby their bankruptcy estate's, possession and control of the tank and propane gas.

A problem also exists with respect to the defendant's contention that, because the debtors were not billed separately for lease charges, no lease existed between the parties, but rather the tank was on the debtors' premises as an "adjunct" to the provision of propane to the debtors. Nothing in the affidavit of Angela Alderman establishes that no consideration was separately paid by the debtors to the defendant for the lease of the propane tank. Further, it is likely that the debtors' purchase price for the propane gas furnished consideration for both the propane gas and the rental of the propane tank, i.e., for the entire service "package." In any event, in Ohio mutual promises are sufficient consideration to support a contract. *Breslin v. Brown,* 24 Ohio St. 565 (Ohio 1874).

"A lease is an agreement for the delivery of property to another under certain limitations for a specified period of time after which the property is to be returned to the owner." *Brown Motors Leasing v. Reucher,* 80 Ohio App.3d 225, 608 N.E.2d 1162, 1164 (1992). At this time, the court will not belabor the point, but an examination of the contract provisions, *supra,* which are replete with references to equipment leasing, clearly establishes that the agreement entered into by the parties constituted an equipment lease agreement.

Section 541 of the Bankruptcy Code provides that property of a bankruptcy estate is comprised of "all legal or equitable *interests* of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (emphasis supplied). The scope of § 541(a)(1) is broad and includes all kinds of property, including "*a possessory interest, or leasehold interest.*" H.R.Rep. No. 595, 95th Cong., 1st Sess. 367 (1977); S.R. No. 989, 95th Cong., 2d Sess. 82 (1978) (emphasis supplied). 1978 U.S.C.C.A.N. 5868, 6323.

As a result, "[a] leasehold is property of the estate if a debtor is the lessee of the property at the time the petition for bankruptcy is filed." *Arizona Appetito's Stores, Inc. v. Paradise Village Investment Co. (In re Arizona Appetito's Stores, Inc.),* 893 F.2d 216, 218 (9th Cir.1990). "Moreover, once a leasehold interest is categorized as property of the debtor's estate, an action may not be commenced in contravention of the automatic stay provisions of 11 U.S.C. § 362." *Babco, Inc. v. Markusic (In re Babco, Inc.),* 28 B.R. 656, 658 (D.W.D.Pa.1983).

As stated, these observations by the court are preliminary and designed to assist counsel in any attempts to resolve this adversary proceeding.

For the foregoing reasons, it is hereby ORDERED that the defendant's motion for summary judgment is DENIED. The proceeding is set for trial on **Wednesday, April 3, 1996, at 9:30 A.M.**